UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **NATHANIEL PARKS,**<br><br>Plaintiff,<br><br>v.<br><br>**CFG HEALTH SERVICES,** *et al.*,<br><br>Defendants. | Case No. 19–cv–21984–ESK–MJS<br><br>OPINION |

**KIEL, U.S.D.J.**

  **THIS MATTER** comes before the Court on defendant David Kelsey's motion for summary judgment (Motion) (ECF No. 85.)  Plaintiff opposes the Motion.  (ECF No. 94.)  For the following reasons, I will grant the Motion and enter judgment in Kelsey's favor.  I will also dismiss Kelsey's cross-complaint against defendants CFG Health Systems and Cheryl Dubose.[1]  (ECF No. 63.)

  **I.** **FACTS AND PROCEDURAL HISTORY**

  Plaintiff filed a *pro se* complaint on December 27, 2019 asserting claims under 42 U.S.C. § 1983 relating to his detention at the Atlantic County Justice Facility (Facility) in January and February of 2018.  (ECF No. 1.)  District Judge Noel L. Hillman granted plaintiff's *in forma pauperis* application on December 31, 2019.  (ECF No. 2.)  Judge Hillman reviewed the complaint pursuant to 28 U.S.C. §1915 and dismissed the complaint without prejudice on October 13, 2020.  (ECF No. 5.)  The case was reopened on December 11, 2020 after plaintiff submitted an amended complaint.  (ECF No. 6.)  Judge Hillman allowed the amended complaint to proceed on March 22, 2021.  (ECF No. 7.)  Magistrate Judge Matthew J. Skahill appointed *pro bono* counsel to

---

[1] Dubose's last name is misspelled as "Dubois" in the second amended complaint.

represent plaintiff on February 8, 2022.  (ECF No. 39.)  Plaintiff filed a second amended complaint on October 7, 2022 raising claims against defendants Warden Kelsey, CFG Health Systems (CFG), and CFG administrator Cheryl Dubose.  (ECF No. 61.)  Kelsey filed a cross-complaint against CFG and Dubose with his answer to the second amended complaint.  (ECF No. 63.)

### A. Second Amended Complaint

The second amended complaint alleges that plaintiff was arrested and detained at the Facility on January 28, 2018.  (*Id.* ¶ 23.)  At that time, plaintiff was suffering from an infection due to gunshot wounds to his buttocks, stomach, and intestines.  (*Id.* ¶¶ 20, 22.)  Plaintiff told the nurse conducting his medical intake at the Facility that he "had chronic medical issues including tibia neuropathy and rectal discharges."  (*Id.* ¶ 24.)  He also told the nurse that "he had four perforations in his stomach requiring immediate surgical intervention or they would become infected and endanger his life, as per [p]laintiff's primary care physician."  (*Id.*)  Plaintiff alleges the Facility's medical staff, supervised by Dubose, took no action to provide him with care despite his requests.  (*Id.* ¶ 26.)

Plaintiff further alleges that he was pushed by another detainee from the Facility's mental health ward on January 7, 2019.  (*Id.* ¶ 27.)  The fall caused further injury to plaintiff's leg neuropathy.  (*Id.*)  "The other detainee also punched [p]laintiff in his abdomen, aggravating his stomach and bowel injuries."  (*Id.* ¶ 28.)  Plaintiff requested assistance from the Facility's medical staff but did not receive any.  (*Id.* ¶ 29.)

Plaintiff was punched in the head by a mental health ward detainee on January 15, 2019.  (*Id.* ¶ 30.)  The medical staff examined plaintiff and concluded that he "suffered a contusion and whiplash."  (*Id.* ¶ 32.)  An x-ray was performed, and the "[s]taff claimed they did not find anomalies in the X-

ray results." (*Id.* ¶ 33.) The staff determined that an MRI was not necessary despite plaintiff's request for one. (*Id.* ¶ 34.)

Plaintiff went to the AtlantiCare Regional Medical Center's Trauma Center for a "life-threatening high-grade bowel obstruction" on April 22, 2019. (*Id.* ¶ 36.) Plaintiff alleges that he continues to suffer from the delayed medical care, "including excruciating pain when attempting to digest food and experiencing days without bowel movements." (*Id.* ¶ 37.) After he was released from the Facility, plaintiff received an MRI for his neck pain and was diagnosed with a pinched nerve and herniated disk in his neck. (*Id.* ¶ 38.)

### B. Kelsey's Statement of Material Facts [2]

Kelsey denies that he ordered medical treatment be withheld from plaintiff. (ECF No. 95–1 ¶¶ 7, 13.) He states he is "not responsible for inmates['] medical care" at the Facility because "[t]here is a contract with CFG … for medical care of inmates." (*Id.* ¶ 13.) Dubose does not recall ever meeting with Kelsey and CFG doctors about plaintiff's medical care. (*Id.* ¶ 14.) She "testified that in the day-to-day operations … her staff does not go to the [w]arden when deciding medical treatment of inmates." (*Id.*) She further "testified that the [w]arden does not put any limitations on inmate treatment and/or care." (*Id.*)

Plaintiff testified at his deposition that he submitted grievances but has not produced documentary support. (*Id.* ¶ 7.) Plaintiff also testified that

---

[2] Kelsey's Statement of Material Facts did not initially comply with Local Civil Rule 56.1(a) because it was filed as part of the brief instead of as a separate document. (ECF No. 85 p. 5.) The Court will excuse this non-compliance because Kelsey corrected the error and there is no evidence Kelsey acted in bad faith. (ECF No. 95–1.) *See Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 607 (D.N.J. 2000) ("Because there is no evidence of bad faith on the part of the defendants, the Court will deny defendants' motion on the merits, rather than on this procedural ground.")

Kelsey had meetings with the medical department and that he was "pretty sure" that Kelsey was responsible for denying him medical treatment. (*Id.* ¶ 9.) He admitted that he does not know if "[Kelsey] is a medical doctor, if he is a medical professional[,] or whether [Kelsey] made any direct decisions on his medical care." (*Id.* ¶ 10.) Plaintiff also testified that he informed CFG employees of his complaints regarding his medical care and "assumed they would inform [Kelsey] and that [Kelsey] was involved in meetings regarding his medical care." (*Id.* ¶ 12.) Plaintiff stated that he did not tell Kelsey about the surgery recommendation during intake. (*Id.* ¶ 15.)

### C. **Plaintiff's Counter Statement of Material Facts**

Plaintiff asserts he had several conversations with Dr. Raymundo Tagle, a CFG employee, during his time at the Facility. (ECF No. 94–1 ¶ 8.) During one of those conversations, Tagle informed plaintiff that Dubose and Kelsey had spoken and made the determination that plaintiff would not be receiving abdominal surgery. (*Id.* ¶ 9.) Plaintiff states he filed grievances about his medical care but never received a response. (*Id.* ¶ 10.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

4

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party must cite specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[T]he burden on the moving party may be discharged by "'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the moving party has satisfied its burden, the non–moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "While the evidence that the non–moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Anderson*, 477 U.S. at 251).

## III. DISCUSSION

Kelsey moves for summary judgment on plaintiff's claims in the second amended complaint that Kelsey violated the Eighth and Fourteenth Amendments by "denying [plaintiff] access to competent, adequate medical care." (ECF No. 61 ¶ 53.)[3] Claims by pretrial detainees for failure to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause and are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).[4]

---

[3] Kelsey also refers to a claim that alleges Kelsey failed to protect plaintiff from being assaulted, (ECF No. 85 p. 12), and an argument that Kelsey is immune from suit pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:5-2(b)(4) (*id.* p. 17.) The second amended complaint contains neither a failure-to-protect-claim nor a Tort Claims Act claim. (ECF No. 61 pp. 6-9.)

[4] The Supreme Court has applied an "objectively unreasonable" standard to analyze an excessive force claim under the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). However, the Third Circuit has declined to

5

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). "In order to sustain this claim under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Id.* (alteration in original) (footnote omitted) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Kelsey does not dispute that plaintiff had a serious medical need, so the only question is whether there is evidence in the record from which a reasonable factfinder could conclude that Kelsey was deliberately indifferent to that need.

The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non– medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (internal citations omitted). "Deliberate indifference can also be found 'where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury.'" *Conrad v. De Lasalle*, 2021 WL 4593273, at *3 (D.N.J. Oct. 6, 2021) (quoting *McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012)).

I find that Kelsey has shown that plaintiff cannot establish Kelsey was deliberately indifferent to plaintiff's medical needs. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not

---

address whether the "objectively unreasonable" standard applies to a deliberate indifference to medical need analysis. *Moore*, 767 F. App'x at 340 n. 2.

treating) a prisoner, a non–medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Kelsey denied meeting with Dubose and Tagle about plaintiff's treatment. (ECF No. 85–9 ¶ 7.) He also denied having any involvement with withholding or approving any medical treatment for plaintiff and stated he "never ordered specific medical treatment or withheld medical treatment of [plaintiff]." (*Id.* ¶¶ 5, 6.) He certified that he never received "any letters, resolution forms or grievances forms from [p]laintiff regarding his medical treatment … ." (*Id.* ¶ 9.) Plaintiff testified during his deposition that he did not know if Kelsey was responsible for his medical treatment. (ECF No. 85–3 p. 29.)

Kelsey has also presented evidence that he was unaware that plaintiff believed he was not receiving medical attention. Plaintiff testified that he had never met Kelsey and would not be able to identify him. (*Id.* p. 35.) Plaintiff never gave Kelsey any grievances about his medical treatment. (*Id.* p. 35.) He did not know if Kelsey was a medical professional or if Kelsey made any direct decisions about his health care. (*Id.* p. 36.)

Dubose testified in her deposition that she did not recall ever speaking with Kelsey about plaintiff, (ECF No. 85–6 p. 16), or having a meeting with Kelsey and Tagle about plaintiff's surgery, (*id.* p. 17.) Dubose specifically denied that she or her employees would ever "go to the warden for assistance when deciding what type of medical care and/or treatment to render to an inmate." (*Id.*) When asked if she was "ever advised by the warden that there is a limitation on the treatment and/or care that you're supposed to give to an inmate," she answered "[n]o, never." (*Id.*) Dubose testified that "[t]he treating physician" has final say over medical treatment, not the warden. (*Id.* p. 6) Therefore, Kelsey has satisfied his burden on summary judgment.

7

Plaintiff argues there is a factual dispute as to Kelsey's participation in his medical care. (ECF No. 94 pp. 8, 9.) Plaintiff asserts Kelsey was aware of his serious medical need because "[p]laintiff informed the intake staff when he was admitted to [the Facility], and further, staff noted [p]laintiff had trouble walking unassisted." (*Id.* p. 8). "More importantly, [p]laintiff had a direct conversation with one of his doctors, Dr. Tagle, who informed him [d]efendants Kelsey and Dubose had decided he would not be receiving his surgery." (*Id.* p. 9.) Plaintiff has not produced any evidence that Kelsey was aware of the intake staff's observations.

Dubose testified that detainees are assessed by the medical staff upon entering the Facility. (ECF No. 85–6 p. 5) She also testified that detainees entering the Facility with prior medical conditions are evaluated by a nurse who determines whether "to accept or refuse that person and have them sent back to the hospital for an evaluation." (*Id.* p. 5) The nurse's decision is not subject to any oversight. (*Id.*)

Plaintiff's deposition testimony that Kelsey, Dubose, and Tagle met about plaintiff's surgery is not enough to raise a dispute of material fact. (ECF No. 85–3 p. 29.) According to plaintiff, Tagle said "[s]omething to the effect that they had a meeting about you; the warden, Cheryl [Dubose], Sergeant Keenan. He was one of those like—I guess he was the—Sergeant Keenan. And he told me that I'm not getting surgery. He said something to the effect you're not getting surgery." (*Id.* p. 30.) Plaintiff asserts this is evidence that "obviously, the warden … must have kn[own] what was going on with my treatment and everything if [the warden] felt as though I didn't need surgery also." (*Id.*) Plaintiff later testified that he did not have direct proof about the meeting. (*Id.* p. 38.)

"Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown,*

589 F.3d 684, 693 (3d Cir. 2009). Plaintiff's "testimony is double hearsay because it describes a statement that" Tagle made to plaintiff "about a conversation that" Tagle "allegedly had with" Kelsey and Dubose. *Id.* If Kelsey did make the comment to Tagle, "that statement would qualify as an admission by a party opponent and would be admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence." *Id.* "However, [plaintiff] offers [Tagle's] repetition of that alleged statement for the truth of the matter asserted … . [Tagle's] repetition is itself therefore hearsay, and it appears to be beyond the reach of any exception to the hearsay rule." *Id.* at 693–94

Plaintiff's testimony that he submitted grievances about his medical treatment is also not enough to withstand summary judgment. Plaintiff testified that he never gave Kelsey any grievances about his medical treatment directly. (ECF No. 85–3 p. 35.) He testified that he may have given copies of grievances about his medical care to his attorney, (*id.* p. 37), but has not produced a copies in opposition to the Motion. Therefore, I cannot evaluate whether the grievances constitute evidence that Kelsey was notified about plaintiff's concerns. Plaintiff was unable to state when he submitted these grievances in the Facility, (*id.* p. 34), or identify to whom he gave them, (*id.* p. 35.)

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff has not produced evidence that Kelsey knew or had reason to believe that the Facility's doctors or their assistants were mistreating plaintiff. Absent such showing, no reasonable jury—even after viewing the evidence in plaintiff's favor—could conclude that Kelsey was deliberately indifferent to plaintiff's serious medical needs even after viewing the evidence

in plaintiff's favor. Accordingly, I find that Kelsey is entitled to judgment as a matter of law.[5]

I will dismiss Kelsey's crossclaims with prejudice as he may not seek contribution from other defendants when judgment has been entered in his favor. *See Fox Int'l Rels. v. Laucius*, No. 04–05877, 2009 WL 5184487, at *13 (E.D. Pa. Dec. 22, 2009) ("[B]ecause judgment has been entered against plaintiffs and in favor of Laucius on the claims asserted in the Third Amended Complaint, Laucius has no basis for claiming contribution or indemnity."); *Nora v. Livingston Tp.*, 410 A.2d 278, 582-83 (N.J. Super. Ct. App. Div. 1980).

## IV. CONCLUSION

For the reasons stated above, I will grant Kelsey's motion for summary judgment. (ECF No. 85.) His cross complaint will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

                                                                                                */s/ Edward S. Kiel*
                                                                                                 **EDWARD S. KIEL**
                                                                                                UNITED STATES DISTRICT JUDGE

Dated: May 6, 2024

---

[5] As summary judgment will be granted in favor of Kelsey, it is unnecessary to address his qualified immunity argument beyond noting that the evidence viewed in the light most favorable to plaintiff does not show that Kelsey violated a federal statutory or constitutional right.